UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        - v.–

Trevor Bickford,

        Defendant.

No. 23 Cr. 91 (PKC)

## TREVOR BICKFORD'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS MULTIPLICITOUS COUNTS

David E. Patton, Esq.
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, New York, 10007
Tel.: (212) 417-8700

*Counsel for Trevor Bickford*

**Jennifer L. Brown**
**Marisa K. Cabrera**
*Of counsel*

## **Table of Contents**

TABLE OF AUTHORITIES.................................................................................iii

BACKGROUND ............................................................................................... 1

ARGUMENT.................................................................................................... 3

    I.      Counts Two through Four are multiplicitous as to Count One because the Indictment charges the same attempted killings more than once. ...................................................................................... 4

    II.    The unit of prosecution of Section 1114 is each act of attempted murder. ............................................................................................. 6

        a.  The plain language of the statute indicates that the appropriate "unit of prosecution" is each act of attempted murder, not each victim............................................................................................. 6

        b.  The statute is at least ambiguous as to the appropriate unit of prosecution and the Court must apply the rule of lenity.......... 11

        c.  The common-law element of specific intent further demonstrates that the unit of prosecution is each act of attempted murder. . 12

    III.   Even if this Court finds that the appropriate unit of prosecution is the victim rather than the act of attempted murder, the Indictment is still multiplicitous. ..................................................................... 16

    IV.   The charge of attempted murder in Count One fully subsumes the allegations in Counts Two through Four and Mr. Bickford would be prejudiced if the government goes to trial on all four counts.........17

CONCLUSION................................................................................................19

## Table of Authorities

**Cases**

*Braxton v. United States,* 500 U.S. 344, 351 n.* (1991) ........................................ 14, 15

*Ladner v. United States*, 358 U.S. 169 (1958)..................................................... 7, 8, 10

*United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011).................................... 7

*United States v. Berry*, No. 20-CR-84 (AJN), 2022 WL 1515397, at *7 (S.D.N.Y. May 13, 2022)................................................................................................... 13, 14

*United States v. Coiro*, 922 F.2d 1008, 1014 (2d Cir. 1991). ..................................... 11

*United States v. Feola*, 420 U.S. 671, 677 n.9 (1975) .................................................. 9

*United States v. Hoy*, 137 F.3d 726, 729 (2d Cir. 1998) .............................................. 9

*United States v. Jackson*, 736 F.3d 953, 956 (10th Cir. 2013) .................................. 11

*United States v. Kerley*, 544 F.3d 172, 178 (2d Cir. 2008)................................... 4, 12

*United States v. Khalje*, 658 F.2d 90, 92 (2d Cir. 1981) ........................................... 18

*United States v. Kirkland*, 12 F.3d 199, 201 (11th Cir. 1994) ................................... 7

*United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994).......................................... 14

*United States v. Mejia*, 545 F.3d 179, 204 (2d Cir. 2008)............................................ 5

*United States v. Polouizzi*, 564 F.3d 142, 154 (2d Cir. 2009) ...................................... 4

*United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981) ............................. 4, 5, 12, 17

*United States v. Rivera Ramos*, 856 F.2d 420, 422–23 (1st Cir. 1988)........................ 8

*United States v. Scott*, 990 F.3d 94, 110 (2d Cir. 2021)............................................. 13

*United States v. Seda*, No. 91 CR. 495 (LLS), 1992 WL 18273, at *3, *5 (S.D.N.Y. Jan. 29, 1992), *aff'd*, 978 F.2d 779 (2d Cir. 1992) .................................................... 5

*United States v. Siddiqui*, 501 F. App'x 56, 59 (2d Cir. 2012), *as amended* (Nov. 15, 2012) ........................................................................................................... 14

*United States v. Soler*, 759 F.3d 226, 233 (2d Cir. 2014) ........................................... 13

*United States v. Voris*, 964 F.3d 864, 869 (9th Cir. 2020) .......................................... 8

*United States v. Wallace*, 447 F.3d 184, 187–88 (2d Cir. 2006) .................................. 5

*United States v. Westley*, No. 3:17-CR-171 (MPS), 2019 WL 2527297, at *5 (D. Conn. June 19, 2019) ........................................................................................................... 14

## Statutes

18 U.S.C. § 111 ................................................................................................. *passim*

18 U.S.C. § 111(a)(1) ........................................................................................... 3

18 U.S.C. § 1111 ................................................................................................. 13

18 U.S.C. § 1114 .............................................................................................. *passim*

18 U.S.C. § 1510(a) ............................................................................................ 11

FRCP 12(b)(3)(B)(ii) ............................................................................................ 1

## Other Authorities

S. REP. 98-225, 328, 1984 U.S.C.C.A.N. 3182, 3504 .................................................. 9

Trevor Bickford respectfully moves this Court pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) for an order finding that Count One of the Indictment is multiplicitous as to Counts Two Through Four and directing the government to elect on which non-duplicative counts it will proceed at trial and to dismiss the remaining counts.

## BACKGROUND

On December 10, 2022, nineteen-year-old Trevor Bickford was escorted via ambulance to the emergency psychiatric department of a local Maine hospital at the request of his mother, who sought medical assistance for her son whom she believed to be struggling with severe mental illness.  Citing his erratic and irrational behavior, his recent obsession with Islam, and his unregulated moods, Mr. Bickford's mother believed that he was suffering psychosis and/or mania.   Despite these concerns, however, the psychiatric department determined that Mr. Bickford was not a risk to himself or others and did not admit him into the hospital for further evaluation.

Without a diagnosis or a treatment plan, a few weeks later, on December 27, 2022, Mr. Bickford traveled by himself on Amtrak from his home in Maine to New York City.  With clothing, food, a kukri knife, and letter from his mother tucked away in his baggage, Mr. Bickford spent the next few days in a local hotel on the lower east side.  As set forth in the Complaint and the Indictment, it is alleged that four days after his arrival in New York, on December 31, 2022, Mr. Bickford traveled to Times Square with his kukri and attacked a group of three on-duty New

1

York City police officers who were congregated together.  In response, an officer shot Mr. Bickford in the shoulder and he was immediately taken to Bellevue.  While there, a team of officers interviewed Mr. Bickford.  They read him his *Miranda* rights, which he waived, and they proceeded to interrogate him while he lay in a hospital bed.  It was during this interrogation that Mr. Bickford expressed that he intended to target all military-aged men – an assertion that later formed the basis of the government's charge in Count One of the Indictment.

After being interrogated and receiving emergency care for his gunshot wound, Mr. Bickford was quickly transferred to the psychiatric unit of Bellevue.  Mr. Bickford, who suffered from auditory hallucinations in the form of "popping" sounds that informed his decision-making as well as accompanying physical sensations, was soon diagnosed with schizoaffective disorder, bipolar type and prescribed various antipsychotics and mood stabilizers.  Mr. Bickford remained in Bellevue's psychiatric ward for over a month until the federal government filed the instant charges against him.  Were it not for the federal charges, Mr. Bickford would have remained admitted at Bellevue's psychiatric ward.

On February 15, 2023, the government filed a seven-count Indictment against Mr. Bickford all arising from this single incident against the three New York City Police Department ("NYPD") officers.  ECF No. 6.  Counts One through Four each charge attempted murder of a federal employee or officer under 18 U.S.C.

§ 1114.[1]  Those charges are based on Mr. Bickford allegedly seeking to wage jihad against the United States by attempting to kill "military-aged men working for the U.S. Government." *Id.* ¶¶ 1, 2, 3, 4.  In support of that overall mission, which is alleged in Count One, the Indictment charges that, on December 31, 2022, Mr. Bickford brought a machete-style knife to Times Square in Manhattan that he used to attack three individual NYPD officers who were then on duty as part of a joint FBI-NYPD operation to patrol the New Year's festivities.  *Id.* ¶¶ 2, 3, 4.  Counts Five through Seven each charge Mr. Bickford with assault of an officer or employee of the United States under 18 U.S.C. § 111(a)(1) based on his attack of those same three NYPD officers.  *Id.* ¶¶ 5, 6, 7.

## ARGUMENT

The government inflated Mr. Bickford's actions on a single night into seven separate charges that stem from the same conduct.  In doing so, it not only challenges the principles of fairness, but it also violates the Double Jeopardy Clause as the Indictment is multiplicitous in that it charges Mr. Bickford with the same act of attempted murder more than once.  Count One charges Mr. Bickford with attempting to murder "military-aged men working for the U.S. Government" generally and with bringing a knife to Times Square on New Year's Eve to carry out

---

[1] As of the time of this filing, New York County is also simultaneously prosecuting this case and has charged Mr. Bickford with eighteen counts all stemming from the same conduct on the same night.  *See* New York County Indictment, attached as Exhibit A.  Notably, unlike the federal Indictment, the New York County Indictment only charges Mr. Bickford with distinct acts committed against each of the three officers, rather than offenses against all "military-aged men."

that mission.  Counts Two through Four charge him with attempting to kill three specific NYPD officers operating as part of a joint FBI-NYPD task force in furtherance of that scheme.  Counts Two through Four are therefore fully subsumed within the charge in Count One of the Indictment and Mr. Bickford cannot constitutionally be punished for all four counts.  The Indictment, therefore, charges at most three acts of attempted murder, and the government must choose on which theory to proceed at trial.

I.    **Counts Two through Four are multiplicitous as to Count One because the Indictment charges the same attempted killings more than once.**

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."  *United States v. Kerley*, 544 F.3d 172, 178 (2d Cir. 2008) (quotation marks omitted).  "The vice in multiplicity of charges is that it may lead to multiple sentences for the same offense and may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes."  *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981).  A multiplicitous indictment, thus, violates the Double Jeopardy Clause of the Fifth Amendment, which "protects against multiple punishments for the same offense."  *United States v. Polouizzi*, 564 F.3d 142, 154 (2d Cir. 2009) (quotation marks omitted).

"When, as here, the same statutory violation is charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution."  *Kerley*, 544 F.3d at 178 (quotation marks omitted).

4

If "Congress leaves a statute ambiguous as to the proper unit of prosecution, the ambiguity should be resolved in favor of lenity." *Id.* (quotation marks omitted).  The Second Circuit has noted that, "as a matter of statutory construction, we are reluctant to turn a single transaction into multiple offenses," and "therefore impute to Congress the intent to impose separate punishments for the same underlying conduct only when Congress has clearly articulated that intent." *Id.* at 179 (quotation marks omitted).  In other words, if "Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *United States v. Wallace*, 447 F.3d 184, 187–88 (2d Cir. 2006) (quotation marks omitted); *see United States v. Mejia*, 545 F.3d 179, 204 (2d Cir. 2008).

Where an indictment is multiplicitous and proceeding to trial on all counts would prejudice the defendant, the remedy is that the government must elect the non-duplicative counts that it will pursue, and the remaining counts are dismissed. *See United States v. Seda*, No. 91 CR. 495 (LLS), 1992 WL 18273, at *3, *5 (S.D.N.Y. Jan. 29, 1992), *aff'd*, 978 F.2d 779 (2d Cir. 1992) (holding that the Indictment was multiplicitous and ordering the government to choose on what counts it would proceed); *Reed*, 639 F.2d at 904 n.6 (noting that the appropriate remedy is election of counts where the "mere making of the charges would prejudice the defendant with the jury").

Count One is multiplicitous as to Counts Two through Four because the unit of prosecution under the statute is each act of attempted murder, not each possible

victim.  Indeed, there is no question that the conduct described in Counts Two through Four are wholly encompassed and clearly described in Count One.  Because the Indictment charges at most three acts of attempted murder—either the overall plan to murder military-aged men on New Year's Eve (Count One) or each of the attacks on the three individual officers (Counts Two through Four)—punishment for all four counts would violate the Double Jeopardy Clause.  Accordingly, this Court should order the government to elect on which counts it will proceed: either Count One or Counts Two through Four.

## II.   The unit of prosecution of Section 1114 is each act of attempted murder.

The text of Section 1114 and the common-law elements of attempted murder plainly demonstrate that the unit of prosecution is each act of attempted murder, not each victim or potential victim.

### a. The plain language of the statute indicates that the appropriate "unit of prosecution" is each act of attempted murder, not each victim.

Section 1114 provides, in relevant part, that:

> Whoever kills or attempts to kill any officer or employee of the United States . . . while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished—. . . (3) in the case of attempted murder or manslaughter, as provided in section 1113.

18 U.S.C. § 1114.  The statutory text reflects an intent to protect federal officers or those assisting federal officers while performing their official duties or on account of

their performance of those duties.  By requiring that the relevant officer or person assisting him be engaged in performing his duties or attacked because of them, the statute demonstrates its two purposes: it seeks to "protect[] U.S. personnel from harm when acting in their official capacity," *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011), and, in so doing, protect the integrity of the federal function of which the officer is a part.

The Supreme Court's decision in *Ladner v. United States*, 358 U.S. 169 (1958), is instructive.   In *Ladner*, the Supreme Court interpreted the predecessor statute to 18 U.S.C. § 111, which prohibits assaulting federal officers[2] and is closely related to Section 1114.  *See United States v. Kirkland*, 12 F.3d 199, 201 (11th Cir. 1994) (referring to Section 111 as a "companion statute" to Section 1114).  The defendant in *Ladner* had been convicted of two counts of assaulting a federal officer after he fired a single bullet into a car that injured two officers, and the defendant argued that the convictions were multiplicitous.  *Ladner*, 358 U.S. at 171.  The question before the Court was whether Congress meant that a "single discharge of a shotgun would constitute one assault" or whether Congress "define[d] a separate offense for each federal officer affected by the doing of the" assaultive act.  *Id*. at 173.  The "scant" available legislative history indicated both "the need for protection

---

[2] 18 U.S.C. § 111 provides, in relevant part: "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . ." is guilty of a crime.

of federal officers" and the "need for legislation to further the legitimate purposes of the Federal government." *Id.* at 175.

Given this dual purpose, the Court concluded that the wording of the statute and legislative history were inconclusive, requiring it to apply "a policy of lenity and adopt the less harsh meaning." *Id.* at 177.  Accordingly, the Court held that each assaultive act was the unit of prosecution under Section 111, not each federal officer who was injured or put in fear of injury because of the relevant act.  *See United States v. Voris*, 964 F.3d 864, 869 (9th Cir. 2020) (firing four bullets supported only four assault convictions under *Ladner*, even though "at least five officers came under [the defendant's] fire from those four shots"); *United States v. Rivera Ramos*, 856 F.2d 420, 422–23 (1st Cir. 1988) ("The defendant is correct in asserting that the appropriate unit or units of prosecution under 18 U.S.C. § 111 must be determined by the number of distinguishable *acts* of assault rather than the number of federal officers assaulted.").  In its decision, the Court gave a helpful analogy in determining that "the act of hindrance as a unit of prosecution without regard to the number of federal officers affected by the act":

> For example, the locking of the door of a building to prevent the entry of officers intending to arrest a person within would be an act of hindrance denounced by the statute [Section 111].  We cannot find clearly from the statute . . . that the Congress intended that the person locking the door might commit as many crimes as there are officers denied entry.

*Ladner*, 358 U.S. at 176.

Here, the unit of prosecution is each act of attempted murder, not each possible victim. Mr. Bickford's alleged act of attempting to murder three officers in Times Square cannot, therefore, be extended to be attempted acts of murder towards all military-aged men as the government has charged in Count One of the Indictment. Indeed, the facts in *Ladner* created a much closer call than those presented in this case as the *Ladner* defendant *did* in fact injure two officers and, even so, the Court declined to consider it as two separate assaults for each officer. In this case, however, Mr. Bickford is alleged to have attempted to murder three different officers through his assaultive acts without any injury or assaultive acts towards other military aged men.

This is further supported when considering the goals of the statute. Like Section 111, where "Congress seeks to protect the integrity of federal functions and the safety of federal officers," *United States v. Feola*, 420 U.S. 671, 677 n.9 (1975), Section 1114 embodies the same two purposes by federalizing the crime of attempting to kill federal officers and those assisting them. The statute's clear requirement that the relevant officer(s) be actively "engaged in" their duty or that the killing be attempted "on account of the performance of official duties" reflects its goal of keeping officers safe in the line of duty and preserving their ability to carry out their function. Attempting to kill a federal officer who is merely on a "personal frolic of his or her own" is not covered by the statute. *United States v. Hoy*, 137 F.3d 726, 729 (2d Cir. 1998) (alterations omitted) (discussing the same language in Section 111); *see also* S. REP. 98-225, 328, 1984 U.S.C.C.A.N. 3182, 3504

9

(emphasizing that the attempted killing "would have to be while the victim was engaged in or on account of his performance of his official duties"). If the statute existed merely to protect federal officers, it would not contain such a clear requirement that the attempted murder be during or because of their work as a federal officer or their assistance of a federal officer.

Further, as the Court wrote in *Ladner*, punishing a defendant in one count for each potential victim would lead to "incongruous results" because it would subject a person who shot and wounded one officer to 10 years' imprisonment and, in contrast, subject a person who merely waved a gun at five officers and *did not* harm them to 50 years' imprisonment. *Ladner*, 358 U.S. at 177. Applying that logic to Count One, if Mr. Bickford had been arrested with a large knife in Times Square and charged with one count of attempted murder for every potential victim of his overall scheme, that could have led to dozens of attempted murder charges even when he had taken no steps to deploy his weapon against any of the officers he encountered that day.[3] Moreover, were the unit of prosecution each victim, rather than each act of attempted murder, the government could have charged Mr. Bickford with attempted murder for each officer he encountered during his travels from Maine to New York and throughout his time in New York City. The government, however, has not charged this case in such a fashion, implicitly

---

[3] This analysis assumes, solely for purposes of the motion to dismiss and without conceding the issue for trial, that carrying the knife to Times Square would satisfy the elements of attempted murder.

acknowledging that the appropriate unit of prosecution is each act of attempted murder, not each victim.

### b. The statute is at least ambiguous as to the appropriate unit of prosecution and the Court must apply the rule of lenity.

At a minimum, the statute is ambiguous about the appropriate unit of prosecution, meaning that the rule of lenity applies.  The modification of the words "officer," "employee," and "person" "by the word 'any' makes that phrase ambiguous."  *United States v. Coiro*, 922 F.2d 1008, 1014 (2d Cir. 1991).  "[T]he word 'any' has typically been found ambiguous in connection with the allowable unit of prosecution, for it contemplates the plural, rather than specifying the singular." *Id.* (quotation marks omitted) (collecting cases); *see United States v. Jackson*, 736 F.3d 953, 956 (10th Cir. 2013) (noting that the Supreme Court "repeatedly has found" language referencing "any person" to be "sufficiently ambiguous as to require lenity" regarding the unit of prosecution).  Based on the ambiguity generated by the word "any," *Coiro* held that the unit of prosecution for Section 1510(a), an obstruction statute,[4] was the "act of obstructing," not the number of individuals whose communications to a criminal investigator were impeded.  *Coiro*, 922 F.2d at 1014-1015.  The Court held that the indictment charging in two counts a single act of obstruction involving interfering with the communications of two different

---

[4] At the time of the offense, 18 U.S.C. § 1510(a) provided, in relevant part: "Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator. . . ."  *Coiro*, 922 F.2d at 1013 (quoting the pertinent version of the statute).

individuals was multiplicitous and ordered the district court to vacate one of the counts, rejecting the government's argument that "any person" necessarily referred to a single individual. *Id.* at 1014, 1015; *see also United States v. Corbin Farm Serv.*, 444 F. Supp. 510, 531 (E.D. Cal.), *aff'd*, 578 F.2d 259 (9th Cir. 1978) (holding that a statute prohibiting the killing of "any migratory bird" was ambiguous as to the unit of prosecution, and therefore an indictment charging one count for each dead bird was multiplicitous).

*Coiro* applies here, where Section 1114 criminalizes an attempt to kill "*any* officer or employee" of the United States or "*any* person" assisting a federal officer. By using the term "any," the statute generates a "typical multiplicity problem" because it "creates a single offense for an act involving several potential victims." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981). In such cases, as here, "us[ing] several counts in charging a violation of the statute may be multiplicitous." *Id.* Because the statutory language could embody a single victim or multiple victims in the same act, Section 1114 is at best ambiguous with respect to whether the correct unit of prosecution is each individual potential victim or each act of attempted murder. The Court must therefore apply the rule of lenity. *Kerley*, 544 F.3d at 178.

### c. The common-law element of specific intent further demonstrates that the unit of prosecution is each act of attempted murder.

Although the multiplicity analysis does not require that the Court consider the common-law elements of the offense, it is helpful as it further supports a finding

that the unit of prosecution is each act of attempted murder, not each victim or potential victim.  The common-law elements of attempted murder inform the interpretation of Section 1114: "A core principle of statutory interpretation is that when Congress uses a common-law term of art, it presumably intends the common-law meaning of that term unless it instructs otherwise." *United States v. Berry*, No. 20-CR-84 (AJN), 2022 WL 1515397, at *7 (S.D.N.Y. May 13, 2022).  That is, "absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *United States v. Soler*, 759 F.3d 226, 233 (2d Cir. 2014) (quotation marks omitted).  "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind[.]"  *Id.* (quotation marks omitted).  The common law, therefore, "furnishes an extrinsic source to aid our interpretation" of statutes that incorporate its terminology.  *Id.  See United States v. Scott*, 990 F.3d 94, 110 (2d Cir. 2021) (noting that Congress "legislate[s] against [the] background of common law").

Courts, therefore, regularly turn to common-law principles to assist in interpreting criminal statutes.  For example, in *United States v. Berry*, the Honorable Alison J. Nathan held that the term "murder" in 18 U.S.C. § 1111 incorporated the common-law "year-and-a-day" rule, which provided that, to show that a person caused the death of another, the death had to occur within a year and a day of the *actus reus.  Id.* at 7.  In reaching that conclusion, the Court wrote that

13

it "must presume that when Congress adopted the term 'murder' from the common law, it knew and adopted the cluster of ideas that were attached, unless the statute directs otherwise." *Berry*, 2022 WL 1515397, at *7.  The Second Circuit has noted that the elements of Section 1114 attempted murder "are those required for attempted murder at common law[.]" *United States v. Siddiqui*, 501 F. App'x 56, 59 (2d Cir. 2012), *as amended* (Nov. 15, 2012) (citing *Braxton v. United States,* 500 U.S. 344, 351 n.* (1991)).  Therefore, the common-law elements of attempted murder are critical in discerning what Congress intended to be the appropriate unit of prosecution.

"[A] specific intent to kill is an essential element" of attempted murder under Section 1114.  *United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994); *see also Braxton*, 500 U.S. at 351 n.* (noting that attempted murder under Section 1114 requires a "specific intent to kill").  "The fact that a deadly weapon was used does not ipso facto prove the specific intent." *Kwong*, 14 F.3d at 194.  In fact, even participating in a shooting is insufficient to satisfy this intent element: "Not every shooting constitutes attempted murder, even when committed under circumstances in which death is very likely to occur." *United States v. Westley*, No. 3:17-CR-171 (MPS), 2019 WL 2527297, at *5 (D. Conn. June 19, 2019).

The fact that the statute requires specific intent to kill further indicates that the unit of prosecution is each act of attempted murder, rather than each victim. *Braxton v. United States* provides an illustrative example.  In *Braxton*, the Supreme Court considered whether the facts elicited at a plea hearing were sufficient to

14

establish the elements of attempted murder and concluded that they were not.
There, four U.S. Marshals attempted to enter an apartment where the defendant
was located.  The Marshals unlocked the door and then forced their way through
the chain lock on the door.  At the same time, the defendant fired a gun and the
bullets lodged in the door.  *Braxton*, 500 U.S. at 345.  The defendant was charged
with one count each of assault of a federal officer, use of a gun in furtherance of a
crime of violence, and attempted murder.  He pled guilty to the first two counts
only.  *Id.* at 345-46.  For purposes of sentencing, the district court found that he had
committed attempted murder, and the Supreme Court reversed.  The Court
reasoned that those facts were ambiguous and established only that the defendant
shot "through the door opening and that the gunshot lodged in the front door just
above the doorknob."  *Id.* at 349 (quotation marks omitted).  Based on that alone, it
"would be unreasonable to conclude that [the defendant] was *shooting at* the
marshals," and not only that, "even if one could properly conclude . . . that [the
defendant] had shot at the marshals," the facts would also have to "have established
that he did so with the intent of killing them."  *Id.* at 350-51 (quotation marks
omitted).  Accordingly, shooting through a door, where multiple people and
potential victims are on the other side, is not enough to establish the specific intent
to kill required for attempted murder.

   Following the logic of *Braxton*, each act of attempted murder is the unit of
prosecution, not each actual or potential victim.  If a defendant fires one shot with
the intent to kill a specific individual, but it ricochets and injures an additional

person, then only one count of attempted murder is appropriate because the shooter only had the specific intent to kill one person. The same goes for a defendant who stabs someone intending to kill him, drops the knife, and it happens to injure a second person. There is still only one act of attempted murder because only one stabbing could have been performed with the requisite intent. When considering this requisite showing of specific intent under the common law for attempted murder, it thus only follows that the multiplicity analysis should be for the act of attempted murder and not the potential victims. Indeed, a victim-centered unit of prosecution is contrary to the statutory text and specific intent element of the crime. Instead, the Court should find that each act of attempted murder is a separate unit of prosecution, and, because the Indictment charges the same attempted murder more than once, that it is multiplicitous.

III. **Even if this Court finds that the appropriate unit of prosecution is the victim rather than the act of attempted murder, the Indictment is still multiplicitous.**

Count One alleges a broad, continuing scheme to "kill military-aged men working for the U.S. Government" that occurred over the course of a month and culminated with Mr. Bickford bringing a machete-style knife to Times Square.[5] Merely bringing the knife to Times Square—assuming that constitutes a

---

[5] It appears that this count may be attempting to mimic a broader conspiracy count that is often charged in cases involving multiple defendants or unindicted coconspirators. Here, because Mr. Bickford allegedly acted alone, the government cannot charge as separate substantive offenses the overall scheme and the acts done to effectuate the same scheme.

substantial step—is part of the same course of conduct as the individual attacks on the three officers. Counts Two through Four explicitly charge specific examples of Mr. Bickford's alleged efforts to carry out the scheme charged in Count One. The "to wit" clauses in Counts Two through Four state: "Bickford sought to wage jihad by killing military-aged men working for the U.S. Government, and in carrying out that mission, he attempted to kill a uniformed officer . . . from the [NYPD]" who was working as part of an FBI-NYPD task force. As is clear on the face of the Indictment, the three officer victims in Counts Two through Four are included as the victims in Count One.

The Indictment is, therefore, multiplicitous even using a victim-centered unit of prosecution. Count One charges an attempt to murder all military-aged men working for the U.S. government by bringing a knife to Times Square, and Counts Two through Four identify specific victims of that same offense. Accordingly, the NYPD officers in Counts Two through Four are included twice no matter whether the Court uses each victim as the unit of prosecution or each act of attempted murder.

**IV.  The charge of attempted murder in Count One fully subsumes the allegations in Counts Two through Four and Mr. Bickford would be prejudiced if the government goes to trial on all four counts.**

Mr. Bickford would be prejudiced by the government proceeding to trial on all four counts. *Reed*, 639 F.2d at 904 n.6. "The vice in multiplicity of charges is that it may lead to multiple sentences for the same offense and may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes."

17

*United States v. Khalje*, 658 F.2d 90, 92 (2d Cir. 1981) (quotation marks omitted). By improperly inflating the number of counts, the government makes it appear that Mr. Bickford committed four acts of attempted murder, when at most he committed three.  Merely reading the indictment to the jury or outlining the charges in the government's opening statement will, therefore, cause Mr. Bickford irreparable prejudice at trial.

Of course, "[t]he principal danger in multiplicity that the defendant will be given multiple sentences for the same offense." *Reed*, 639 F.2d at 904 n.6.  With that concern in mind, the government is seeking to expose nineteen-year-old Mr. Bickford to a maximum term of 140 years by creating a fourth attempted murder charge stemming from a single episode allegedly committed during a psychotic break. If Count One is dismissed, Mr. Bickford will still face 120 years and the possibility of being incarcerated until the hypothetical age of 139.  Given this exposure, Mr. Bickford would undoubtedly be prejudiced by the inclusion of this fourth attempted murder count, mandating dismissal of the multiplicitous count.

## CONCLUSION

As such, we respectfully request that the Court conclude that the Indictment is multiplicitous, in part, and order the government to elect whether it will proceed on Count One or Counts Two through Four.

Dated:      New York, New York
            July 14, 2023

Respectfully submitted,
Federal Defenders of New York, Inc.

By: _____

Jennifer L. Brown
Marisa K. Cabrera
Federal Defenders of New York, Inc.
Attorneys for Trevor Bickford
52 Duane Street, 10th Floor
New York NY 10007
Tel.: (212) 417-8700

19