UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                       23-cr-91 (PKC)

   -against-           OPINION AND ORDER

TREVOR THOMAS BICKFORD,

        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

   Defendant Trevor Thomas Bickford moves for an Order dismissing Count One of the Indictment or, alternatively, dismissing Counts Two through Four, arguing that the four counts combined violate the doctrine of multiplicity, which is an aspect of the Double Jeopardy Clause of the Fifth Amendment.  Count One, brought under 18 U.S.C. § 1114, charges that on December 31, 2022 in Times Square defendant attempted to murder men of military-service age working for the United States government who were in the course of performing their duties.  No victim is identified in Count One.  Counts Two through Four, also brought under section 1114, alleges that on December 31, 2022 in Times Square defendant attempted to murder three individuals (each charged in a separate count) who are alleged to be men of military-service age working for the United States government who were in the course of performing their duties.

   Because the victims of the attempted killings charged in Counts Two through Four are among the intended victims in Count One, and the counts are brought under the same statute with no additional elements, the defendant's motion will be granted, and the Court will require the government to elect to proceed under either Count One or Counts Two through Four.

The Statute and the Indictment

Counts One through Four all charge Bickford with attempted murder under section 1114, which states in relevant part:

> Whoever . . . attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished . . . .

18 U.S.C. § 1114(a).

As described in Count One, Bickford traveled from Maine to New York City for the purpose of engaging in a violent jihad against the United States government. (Indictment ¶ 1.) Count One charges that he arrived in the Times Square area on or about December 31, 2022 with a machete-style knife for the purpose of using that knife to kill military-aged men working for the United States government. (Id.) Counts Two through Four charge Bickford with the attempted murders of three individual uniformed officers working for the NYPD as part of an FBI-NYPD joint operation, meaning that they were therefore working for the United States government. (Id. ¶¶ 2-4.)[1]

Multiplicity

Bickford's motion is styled as a motion to dismiss multiplicitous counts, invoking Rule 12(b)(3)(B)(ii), Fed. R. Crim. P. The Rule requires that a defense or objection premised upon "charging the same offense in more than one count (multiplicity)" must be raised prior to trial if the basis of the motion is reasonably available to the defense and can be determined by the court without a trial.

---

[1] Counts Five through Seven charge Bickford with assaulting officers and employees of the United States and are not at issue in this motion.

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999); accord United States v. Kerley, 544 F.3d 172, 178 (2d Cir. 2008). "This violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once." Chacko, 169 F.3d at 145. "It also 'may improperly prejudice a jury by suggesting that a defendant committed not one but several crimes.'" United States v. Regensberg, 604 F. Supp. 2d 625, 629 (S.D.N.Y. 2009) (Marrero, J.) (quoting United States v. Reed, 639 F.2d 896, 904 (2d Cir. 1981)).

If a statutory offense is charged as separate counts, a court must determine "whether Congress intended the counts to constitute separate 'units of prosecution.'" Kerley, 544 F.3d at 178; see also United States v. Polouizzi, 564 F.3d 142, 154 (2d Cir. 2009) ("When, as here, the same statutory violation is charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution.") (quotation marks omitted).

If the indictment charges separate units of prosecution, multiplicity may arise if different counts are premised on identical underlying conduct. See United States v. Ansaldi, 372 F.3d 118, 124 (2d Cir. 2004) (counts are not multiplicitous if "each count undoubtedly required proof of something that the other did not; that is, the counts are not identical."), abrogated on other grounds by McFadden v. United States, 576 U.S. 186 (2015). "If there is an element in each offense that is not contained in the other, they are not the same offense for purposes of double jeopardy, and they can both be prosecuted." Chacko, 169 F.3d at 146.

Bickford urges that combining the four counts in one charging instrument violates multiplicity principles because Count One encompasses the crimes charged in Counts Two

through Four.  Bickford principally relies on Ladner v. United States, 358 U.S. 169, 178 (1958), which held that the single discharge of a shotgun that caused the wounding of two federal officers constituted one violation of a statute criminalizing the assault of federal officers carrying out their official duties.  The same statute also made it a crime to impede or intimidate a federal officer in the performance of official duties.  Id. at 170 n.1 (citing 18 U.S.C. § 254 (1940 ed.)).  The Supreme Court concluded that the statutory text was ambiguous and applied the rule of lenity to conclude that the unit of prosecution under the statute was the assault itself and not the number of victims harmed.  Id. at 177-78.

The Court concludes that this is a simpler case than Ladner because the conduct charged under section 1114 in Count One is facially broad enough to compass the attempted killing of each of the three officers charged under section 1114 in Counts Two through Four.  Each of the attempted killings charged in Counts Two through Four are alleged to be separate kinetic acts involving separate attacks against three separate victims.

United States v. McVeigh, 940 F. Supp. 1571, 1583-84 (D. Colo. 1996), cited by the parties, holds that the death of each victim of a bombing may be charged in a separate count under section 1114, a point Bickford does not dispute insofar as it applies to the separate attempted killings charged in Counts Two through Four.  For much the same reason, United States v. Bin Laden, 91 F. Supp. 2d 600, 618-19 (S.D.N.Y. 2000), does not shed light because it upheld separate counts for each victim of two bombings under a different statute.

The government endeavors to differentiate Count One from the other three section 1114 counts by portraying it as addressing conduct that precedes the alleged use of violence against the three officers harmed in Count Two through Four.  The government states that at trial, it will present evidence that Bickford had the intent to advance jihad through killing U.S.

government officials and that he traveled to the Times Square area with that purpose. (Gov't Mem. at 23-24.) According to the government, Bickford took substantial steps toward committing the offense charged in Count One, including extensive research, the use of a "secret" phone app called Tor, the selection of a preferred weapon, travel to New York City two days before his planned attack, a charity donation in anticipation of his "martyrdom," pre-attack prayers, and scouting the area looking for intended victims. (See id.) The government urges that this broader scheme is based on conduct independent from the actual, physical attacks upon individual officers charged in Counts Two through Four. (Id. at 30-31.)

The Second Circuit has affirmed convictions of attempted crimes based on similar evidence of a defendant's substantial steps toward committing the offense. "A conviction for attempt requires proof that a defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission." United States v. Farhane, 634 F.3d 127, 145 (2d Cir. 2011); see also United States v. Pugh, 945 F.3d 9, 20 (2d Cir. 2019). The substantial step "must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." Id. (quotation marks omitted).

But the government's argument misses the mark. Defendant does not argue that Count One fails to charge a crime. (9/13/23 Tr. 13.) Nor does the defense argue that Count One cannot encompass the attempt on Officer-1, Officer-2 or Officer-3 charged in Counts Two through Four. The defense argument is the precise opposite: the attempted murder of these three officers is within the ambit of Count One, which contains no temporal or event-based cut off.

The Court agrees. The intended victims of the crime alleged in Count One include the victims in Counts Two through Four. Count One charges an attempted killing of "officers and employees of the United States while such officers and employees were engaged in and on account of the performance of their official duties, and persons assisting such officers and employees in the performance of such duties and on account of that assistance. . . ." The "to wit" clause charges that defendant acquired a machete-type knife "for the purpose of using that knife to kill military-aged men working for the U. S. Government." Counts Two through Four also allege an attempt to kill an "officer and employee of the United States while such officer and employee was engaged in and on account of the performance of his official duties, and a person assisting such officer and employee in the performance of such duties and on account of that assistance," and the "to wit" clauses, while specific to Officer-1, Officer-2 and Officer-3, describe them as part of the defendant's effort "to wage jihad by killing military-aged men working for the U.S. Government." At argument, the government conceded that the three officers were military-aged men working for the U.S. government. (9/13/23 Tr. at 9.) Under section 1114 there is no additional element of a crime that the government must prove for Count One, as distinguished from Counts Two through Four.

The government suggests that the Court should defer ruling on the motion until after trial. (Gov't Mem. at 34-35.) Post-trial vacatur of one of two multiplicitous convictions was the remedy imposed by the Supreme Court in Ball v. United States, 470 U.S. 856, 865 (1985).[2]

---

[2] In Ball, unlike this case, the multiplicitous counts were charged under two different statutes and the analysis was neither straightforward nor free from serious doubt. Id. at 862-65. The Court acknowledges that it has discretion to wait until trial to decide the multiplicity issue but declines to do so for the reasons stated above. See United States v. Walsh, 194 F.3d 37, 46 (2d Cir. 1999).

The Court declines to accept the government's suggestion on this straightforward motion free from serious doubt. In any plea negotiations, Bickford would be faced with at least one additional count that should not have been charged in the Indictment, carrying a maximum sentence of twenty years' imprisonment. The Court will not leave it to government largesse to make a plea offer that does not require defendant to plead to all four counts. It is the right of the defendant not to be charged with the same crime in multiple counts and he need not bargain with the government to secure that right.

The government also offers to consent to a jury instruction that the jury may not convict the defendant on Count One premised upon the attempted killings of Officer-1, Officer-2 or Officer-3 charged separately in Counts Two through Four. (9/13/23 Tr. at 13.) Wholly apart from whether such an instruction might cure or mitigate prejudice or error, multiplicity has been timely raised prior to setting a trial date, and it is appropriate for this Court to decide the motion.

CONCLUSION

Defendant's motion is GRANTED to the extent that within 14 days, the government shall file with the Court a consent to the dismissal of either Count One or Counts Two through Four. The Clerk is respectfully directed to terminate the motion. (ECF 27.)

SO ORDERED.

_P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 26, 2023